<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

<table>
<tr>
<td>

RB RESTORATION, Individually and On Behalf of All Others Similarly Situated,

*Plaintiff*,

v.

MOSAIC TERRAZZO AND CHEMICAL PRODUCT DECORATIVE FINISHER MASON WORKERS ASSOC. LOCAL 7 OF NEW YORK, NEW JERSEY & VICINITY INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFT WORKERS, *et al.*,

*Defendants*.

</td>
<td>

Civil Action No. 25-04246

**OPINION**

March 31, 2026

</td>
</tr>
</table>

**SEMPER**, District Judge.

The current matter comes before the Court on (a) Defendant Marble Terrazzo & Specialty Contractors Association Inc.'s ("Contractors' Association") motion to dismiss the Complaint (ECF 1, "Compl.") (ECF 12); (b) the Trustee Defendants'[1] (the "Trustees") motion to dismiss the Complaint (ECF 16); and (c) Defendant Mosaic, Terrazzo and Chemical Product Decorative Finisher Masons Workers Association Local No. 7 of New York, New Jersey & Vicinity International Union of Bricklayers and Allied Craftworkers (BAC)'s (the "Union") motion to

---

[1] The Trustee Defendants are the Trustees of the Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds, Trustees of the Bricklayers and Trowel Trades International Pension Fund, and the Trustees of the International Masonry Institute. (ECF 16.) The Trustee Defendants were incorrectly named in the caption of the Complaint as Trustees of the Mosaic and Terrazzo Welfare Funds of the Bricklayers & Trowel Trades International Pension Fund and Trustees of the International Masonry Institute. (*See id*; ECF 1.)

1

dismiss the Complaint (ECF 28). Plaintiff opposed all three motions to dismiss. (ECF 34-37; ECF 46.) Defendants filed reply briefs. (ECF 44; ECF 55.) The Court has decided the motions to dismiss upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, the Trustee Defendants' motion to dismiss is **ADMINISTRATIVELY TERMINATED** pending service of process, and the Contractors' Association and Union's motions to dismiss are **GRANTED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

This suit arises from payments the Union and Trustees collected from Plaintiff RB Restoration d/b/a Midtown Terrazzo ("RB") pursuant to a collective bargaining agreement ("CBA"). (Compl. ¶¶ 65, 69.)

Defendant Mosaic, Terrazzo, and Chemical product Decorative Finisher Masons Workers Association Local No. 7 of New York and New Jersey and Vicinity International Union of Bricklayers and Allied Craft Workers (the "Union") is a labor organization that does business in New York and New Jersey. (*Id.* ¶¶ 16-17.) Defendant Trustees serve as trustees to a collection of funds described in collective bargaining agreements between the Union and the Contractors' Association (the "Terrazzo Benefit Funds"). (*Id.* ¶¶ 7-8, 22, 24.) Some of the Terrazzo Benefit Funds are jointly administered and some are not. (*Id.* ¶¶ 25-27.) The Contractors' Association, also a Defendant here, is an employer collective known as the Marble Terrazzo and Specialty Contractors Association Inc. (*Id.* ¶ 6.) RB is not a member of the Contractors' Association. (*Id.* ¶ 70.)  The Contractors' Association negotiates CBAs with the Union on behalf of its members, and

---

[2] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

the Union allegedly does not negotiate with members of the class who are not members of the Contractors' Association. (*Id.* ¶ 10.)

RB is a business entity with a principal place of business in New Jersey. (*Id.* ¶ 14.) RB was awarded a contract to complete the Terrazzo Floor tiles at Grand Central Station at an unidentified date (the "Grand Central Contract"). (*Id.* ¶ 61.) RB alleges that the Union put pressure on the general contractor, to whom Plaintiff was contracted, to require their members to be employed and perform "covered work" under the CBA, including the installation and construction of terrazzo. (*Id.* ¶ 62.) The general contractor then put pressure on RB to utilize union employment and sign the CBA. (*Id.* ¶¶ 64, 66.) RB alleges that this was done to "coerce" it to hire union members and pay into various Terrazzo Benefit Funds. (*Id.* ¶ 63.)

On June 12, 2015, RB signed an "Independent Employer Agreement" with the Union in which it agreed to the terms of a preexisting CBA between the Union and the Contractors' Association. (*Id.* ¶ 65; ECF 13, Declaration of Adrianna R. Grancio ("Grancio Decl.") Ex. B.[3]) From June 12, 2015 until June 30, 2017, the term of the CBA, the CBA required RB to hire union members, which RB did. (*Id.* ¶¶ 67-68; Grancio Decl. Ex. B.) Under the CBA, RB was obligated to pay "fringe benefits contributions" to the jointly administered Terrazzo Benefit Funds ("Jointly Administered Funds") and other funds by way of payments to the Union, even though RB and the Union did not establish a separate written trust or trust agreement. (*Id.* ¶ 69.) Although the CBA expired on June 30, 2017, the Union refused to bargain with RB but claimed the CBA continued under an "evergreen clause" and therefore RB had to continue making fringe benefit payments

---

[3] The Court properly considers the CBA at the motion to dismiss stage because it is "explicitly relied upon in the complaint." *Burlington Coat Factory*, 114 F.3d at 1426.

under the CBA.[4] (*Id.* ¶¶ 69, 73, 90.) RB alleges that the Union allowed only the Contractors' Association to negotiate the CBAs with the Union, and as a nonmember of the Association, RB "has no voice" in appointing Trustees to the Terrazzo Benefit Funds. (*Id.* ¶¶ 73-76.) RB further alleges that the Contractors' Association negotiates the CBAs on behalf of its members and does not act for non-members. (*Id.* ¶ 37.) RB alleges it sent notices requesting separating bargaining with the Union, but the Union did not bargain or mediate with RB. (*Id.* ¶¶ 87-89.)

RB alleges that it paid the invoiced amounts consistent with its obligation under the CBA. (*Id.* ¶ 70.) Starting June 12, 2015, RB was invoiced and paid a total of $3,501,048.00 to the Union. (*Id.* ¶¶ 77, 79.) RB alleges that this created a large "slush fund" that was illegal under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.* (*Id.* ¶ 77.) RB also deducted Union dues from paychecks and paid that sum to the Union. (*Id.* ¶ 80.) After the CBA expired, the Union continued to invoice RB under the "evergreen clause," but increased rates over and above the CBA rates. (*Id.* ¶¶ 92-94.) On November 18, 2021, an agent of the Union conducted an audit on RB for January 1, 2018 through June 30, 2021. (*Id.* ¶ 97.) RB alleges that it paid all Union employees as required and it was not in default of its obligation under the CBA at the time of the audit. (*Id.* ¶¶ 98-100.) However, following the audit, the Union demanded payment of over $6.84 million "over and above" RB's contractual obligations. (*Id.* ¶¶ 101-02.) RB alleges that this money was "not due and owing." (*Id.*)

The Trustees commenced litigation against RB on November 4, 2021 in the Eastern District of New York, seeking money RB allegedly owed as uncovered by the audit (the "2021 Action"). (*Id.* ¶¶ 108-111.) RB alleges that the Trustees and Union commenced the litigation to claim money

---

[4] The CBA signed between the Union and RB states that the CBA would automatically renew unless written notice to terminate was given by either party. (Grancio Decl. Ex. B at 32.) Plaintiff does not allege that it ever attempted to terminate the CBA. (*See* Compl.)

even though work was not performed in order to place RB at a competitive disadvantage with its competitors who are members of the Contractors' Association. (*Id.* ¶ 111.) According to the Complaint, the Trustees have commenced approximately 188 state and federal court litigations against the putative class to collect claimed delinquent employer contributions. (*Id.* ¶¶ 9, 12, 122.) RB incurred defense costs and made a settlement offer of $450,000 "to mitigate damages and preserve commercial interests." (*Id.* ¶ 113.) RB alleges it paid the $450,000 owing from the settlement by "checks or assignment of checks." (*Id.* ¶ 115.) RB also alleges it paid the Union $216,280.13, but that the Union either concealed receiving the settlement funds, failed to turn the fringe benefit contributions over to the Trustees, or that the Trustees attempted to collect on the settlement twice. (*Id.* ¶ 116.) On July 13, 2023, the Trustees commenced a summary state court proceeding in New York Supreme Court (the "2023 Action"); the Trustees ultimately withdrew $234, 216.98 of RB's money from RB's bank account directly. (*Id.* ¶ 119.) RB maintains that the Trustees "collected $450,000 and then another $234,216.98." (*Id.* ¶ 120.) RB further maintains that the claims against RB were filed to "punish[] and burden[] RB for refusing to join the association and union framework." (*Id.* ¶ 166.)

RB filed the immediate action, a putative class action, on May 14, 2025. (ECF 1.) Its Complaint lists eight claims but effectively includes thirteen causes of action. (*See* Compl.) The claims are as follows: structural defects resulting in violations of Section 302(b) of LMRA (Count 1); "lack of establishment of a compliant trust agreement lack of equal representation [sic]" (Count 1.1); the "scheme" (Count 2); abuse of process (Count 2.1); tortious interference with prospective economic advantage (Count 2.2); civil conspiracy (Count 2.3); unfair competition (Count 3); statutory unfair competition under N.J. Stat. Ann 56:4-1 (Count 3.2); "ERISA issues" (Count 4); breach of the CBA (Count 5); unfair labor practices (Count 6); unjust enrichment (Count 7); and

class action certification (Count 8). Plaintiff seeks various remedies including declaratory judgment that the Jointly Administered Funds are illegal under LMRA and that RB shall not be responsible to participants of the Terrazzo Benefit Funds (Compl. at 36); that Defendants account for the sums Plaintiff paid to them from June 12, 2015 through the present (*id.* at 36-37, 50); disgorgement of all monies RB paid to Defendants (*id.* at 37, 44, 47-50); an order enjoining Defendants' further collections from RB and further "sham litigation" (*id.* at 37, 44); and an appointment of an impartial umpire to reform the trusts described as jointly administered (*id.* at 36-37, 51), among others.

On July 11, 2025, the Contractors' Association filed a motion to dismiss. (ECF 12.) On the same day, the Trustees filed a motion to dismiss. (ECF 16.) On August 6, 2025, the Union filed a motion to dismiss. (ECF 28.) On August 20, 2025, Plaintiff filed an opposition to the Contractors' Association's motion to dismiss and the Trustees' motion to dismiss. (ECF 34.) On August 22, 2025, Plaintiff filed a corrected opposition due to a clerical error related to Exhibit A of its original filing. (ECF 35-37.) On September 22, 2025, the Trustees and Contractors' Association jointly filed a reply brief in further support of their motions to dismiss. (ECF 44.) On September 29, 2025, Plaintiff filed an opposition to the Union's motion to dismiss. (ECF 46.) On October 15, 2025, the Union filed a reply in further support of its motion to dismiss. (ECF 55.)

## II.    LEGAL STANDARD

### A.  Rule 8(a)

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that any pleading that includes a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When a complaint does not comply with the requirements set out by Federal Rules of Civil Procedure 8(a)(2) and 8(d)(1), "the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, or to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal citations omitted). However, dismissal "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Peay v. Sager*, 801 Fed. App'x 66, 68 (3d Cir. 2020) (quoting *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004)).

### B.  Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." Id. at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III.    ANALYSIS

### A.  The Trustees' Motion to Dismiss Pursuant to Rule 4

The Court first addresses the Trustees' argument that all claims should be dismissed against them because Plaintiff has not served them under Federal Rule of Civil Procedure ("Rule") 4. (ECF 21, "Trustees Br." at 12-15.) It is unclear from the Complaint or filings whether Plaintiff is suing the Trustees in their individual capacities or in a different capacity. In either case, Plaintiff does not dispute that it has failed to properly serve the Trustee Defendants in compliance with Federal Rule of Civil Procedure 4. (*See* ECF 37; ECF 37-1.) Plaintiff's counsel, in a declaration attached to Plaintiff's opposition to the Trustees' motion to dismiss, states only that "[w]e request that the Court deem the International Trustees served on the basis of Virginia & Ambinder's Esq. [sic] legal representation in lawsuits against RB and numerous others for the purposes of this motion." (ECF 37-1 ¶ 4.) Plaintiff has not filed a motion for alternative service or cited any legal authority supporting its request.

"Notice cannot by itself validate an otherwise defective service. Proper service is still a

8

prerequisite to personal jurisdiction." *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir. 1993). "[D]istrict courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process." *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). Courts are "reluctant to dismiss an action" when a plaintiff acts in good faith but fails to effect proper service. *Ramada Worldwide Inc. v. Shriji Krupa, LLC*, No. 07-2726, 2013 WL 1903295, at *6 (D.N.J. Apr. 15, 2013).

Based on the foregoing, the Court grants Plaintiff thirty (30) days from the entry of this opinion and accompanying order to properly serve the Trustee Defendants. *See Hoist v. New Jersey*, No. 12-5370, 2013 WL 5467313, at *3 (D.N.J. Sept. 30, 2013) (noting that courts will grant additional time to a plaintiff who acts in good faith to properly serve a defendant despite prior failure to effect proper service of process). The Court directs the Clerk of Court to administratively terminate the Trustee Defendants' motion to dismiss pending proper service of process.

### B. Count 1 and Count 1.1

Although Plaintiff's allegations are not entirely clear, the Court interprets Count 1 as a claim for violation of Section 302(b) of the LMRA, 29 U.S.C. § 186. (Compl. at 29.) Count 1.1, which is similarly unclear and labeled "lack of establishment of a compliant trust agreement lack of equal representation [sic]," includes allegations that the Defendants violated Section 302(a), (b), and (c)(5) of LMRA. (*Id.* ¶¶ 131-155.) The Union and Contractors' Association both argue that Counts 1 and 1.1 should be dismissed against them for improper group pleading under Rule 8 and because Plaintiff fails to state a claim under Section 302. (ECF 14, "Contractors' Association Br." at 12-15; ECF 29, "Union Br." at 5-6.) Plaintiff argues that it has properly alleged structural LMRA

violations and the claims should not be dismissed. (ECF 34, "Opp. to Contractors' MTD" at 12-13.)

"When Congress enacted § 302 its purpose was…to deal with problems peculiar to collective bargaining," such as "corruption…through bribery of employee representatives by employers,…extortion by employee representatives, and…the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control." *Arroyo v. United States*, 359 U.S. 419, 424-26 (1959) (footnotes omitted). Accordingly, subsection 302(a) prohibits an employer or association of employers "from, *inter alia*, making payments to any representative of its employees, including the employees' union and union officials." *Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581, 585 (1993). Subsection 302(b)(1), "the 'reciprocal' of subsection (a), mak[es] it unlawful for employee representatives to receive the payments prohibited by subsection (a)." *Id.* (citing *Arroyo*, 359 U.S. at 423). Subsection 302(c) provides certain exceptions to the prohibitions. *Id.* at 586.

> In *Demisay*, the Supreme Court examined Section 302 of the LMRA. It held that:
>
> A "violation" of § 302 occurs when the substantive restrictions in §§ 302(a) and (b) are disobeyed, which happens, not when funds are administered by the trust fund, but when they are "pa[id], len[t], or deliver[ed]" to the trust fund, § 302(a), or when they are "receive[d], or accept[ed]" by the trust fund, or "request[ed], [or] demand[ed]" for the trust fund, § 302(b)(1).

*Id.* at 588 (alterations in original). The Supreme Court further held that Section 302(e) of the LMRA, which provides jurisdiction to restrain violations of Section 302, "does not provide authority for a federal court to issue injunctions against a trust fund or its trustees requiring trust funds to be administered in the manner described in § 302(c)(5)." The Court held that courts only have jurisdiction when the substantive restrictions in §§ 302(a) and (b) regarding the making or

10

receipt of payments to a non-qualifying trust, are violated, but "not when funds are administered by the trust fund." *Id.* at 588, 590.

On the face of the Complaint, Plaintiff alleges in Count 1 and Count 1.1 that Defendants violated Section 302(a) and (b); it does not seek an injunction requiring that the trust funds be administered in the manner described in § 302(c)(5), as prohibited under *Demisay.* In its Complaint, Plaintiff states, "[b]ecause RB did not negotiate the CBA the amount of fringe benefit payments was a *fait accompli*. The demands for payment, lawsuits for payment and receipt of payments violated the LMRA because it creates a large cash unregulated fund." (Compl. ¶ 69.) Although not entirely clear, Plaintiff appears to be alleging that the Trustees' and Union's demand for payments from RB effectively violated Sections 302(a) and (b) by creating an unregulated single-employer fund. (*See id.*)

Plaintiff mischaracterizes its contributions to the Terrazzo Benefit Funds in an attempt to circumvent *Demisay*. Plaintiff signed on to the CBA between the Contractors' Association and the Union on May 12, 2015. (*See* Grancio Decl. Ex. B). By doing so, Plaintiff agreed to contribute to the Terrazzo Benefit Funds. (*See id.* at 17-20.) Indeed, Plaintiff admits that it is "a contributing employer to the Funds having submitted to the CBA negotiated and signed between the Union and the Contractors' Association." (Compl. ¶ 131; *see also id.* ¶ 133.) Plaintiff complains that it contributes to the Funds but is not "a member of the Contractors' Association and has no voting rights, nomination rights, or any participatory role in trustee selection or plan governance and administration." (*Id.* ¶ 133.) These allegations belie Plaintiff's assertion that its contributions to the Terrazzo Benefit Funds named in the CBA are somehow contributions to a different, unregulated fund.

Plaintiff's issues are therefore best characterized as complaints about the administration of the Funds, including that "employer-side Trustees…are selected exclusively by the Contractor's [sic] Association"; "RB…has no voting rights, nomination rights, or any participatory role in trustee selection or plan governance and administration"; and "RB is not advised as to what happens to the money they pay. There is no transparency." (Compl. ¶¶ 133-35.)[5] In accordance with *Demisay*, for plaintiffs to state a claim under the LMRA, the suit must challenge the "purposes for which [a] fund was established" rather than the mechanisms by which the fund operates. *Lipton v. Consumers Union of U.S., Inc.*, 37 F.Supp.2d 241, 246 (S.D.N.Y. 1999). And in any case, Plaintiff "alleges no bribery, extortion, or misuse of union funds," so 29 U.S.C. § 186 "offers no relief." *Myers v. Bricklayers & Masons Local 22 Pension Plan*, 629 Fed. App'x 681, 685 (6th Cir. 2015).

Plaintiff's allegations that the Terrazzo Benefit Funds fail to comply with the statute's equal representation requirement (Compl. ¶¶ 136, 139) under Section 302(c)(5)(B) of the LMRA also fails. Under this section of the LMRA, such plans must be "jointly administered by an equal number of employer and union trustees." *Textile Workers Pension Fund v. Std. Dye & Finishing Co.*, 725 F.2d 843, 846 (2d Cir. 1984). Plaintiff does not provide support for its argument that the equal representation requirement is violated where only a subset of employers obligated to make payments under the CBAs are eligible for employer-side trustee positions. (Compl. ¶ 134; ECF 34, Opp. to Contractors' MTD at 12-13.) Plaintiff's allegation is that the Terrazzo Benefit Funds do not include it as an employer-side trustee, not that the Terrazzo Benefit Funds fail to comply

---

[5] The Court does not consider in this opinion allegations contained in Plaintiff's counsel's Declaration in Opposition to the Defendants' Motions to Dismiss (ECF 37-1, "Abrahamsen Decl.") that add on to or contradict the allegations contained in the Complaint. *See Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) ("It is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

with the equal representation requirement. (*See id.* ¶ 139.) These allegations are therefore again no more than complaints regarding the administration of the Terrazzo Benefit Funds. Count 1 is therefore dismissed.

### C. **Count 2**

Count 2 is brought against all Defendants. It is labeled only as "the scheme." (*See* Compl. at 39.) Plaintiff alleges that the "scheme" includes overbilling employers who are not members of the Contractors' Association; the conduct of unnecessary audits; the filing of lawsuits to claim inflated invoices due to overbilling; and "bringing settlement claims in a different jurisdiction." (*Id.* ¶ 158.) The Court cannot identify a legal claim in Count 2.[6] Plaintiff appears to enumerate its legal claims related to the "scheme" in Counts 2.1, 2.2, and 2.3 of the Complaint. For the foregoing reasons, the Court dismisses Count 2.

### 1. **Count 2.1**

Count 2.1 brings a claim for common law "abuse of process." (*See* Compl. at 42.) Although the claim appears to be brought against all Defendants, it refers only to the Union and the Trustees.

First, the Court dismisses Count 2.1 against the Contractors' Association for improper group pleading. Mere "conclusory allegations against defendants as a group" that fail "to allege the personal involvement of any defendant" violate Rule 8. *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015). Instead, a plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.* Group pleading fails to comply with Rule 8 because it does not provide each defendant fair notice of the claims against them and the grounds upon which they rest. *JD Glob. Sales, Inc. v. Jem D Int'l Partners, LP*, No. 21-19943, 2023 WL 4558885, at *7 (D.N.J. July 17, 2023) (collecting cases). Here, the

---

[6] The Court also cannot identify a viable standalone claim in Count 8, "Class Action Certification," and also dismisses this claim.

Complaint does not include any allegations about the Contractors' Association related to the abuse of process claim or the 2021 and 2023 Actions.

"[A]n abuse of process occurs when a prosecution is initiated legitimately [but] thereafter is used for a purpose other than that intended by the law." *Mitchell v. Guzick,* 138 Fed. Appx. 496, 502 (3d Cir. 2005) (citation omitted). To properly plead the tort of abuse of process, also known as malicious abuse or misuse of process, a party must allege: (1) an ulterior motive; and (2) "some further act after the issuance of process representing the perversion of the legitimate use of the process." *See Tare v. Bank of Am.*, No. 07–583, 2009 WL 799236, at *7 (D.N.J. Mar. 24, 2009) (citing *Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1036–37 (3d Cir. 1988)).

The abuse of process claim against the Union is dismissed because there are no allegations that the Union ever filed a lawsuit against Plaintiff. (*See* Compl.) Although the Trustees have not been properly served, this claim would also fail against the Trustees. Plaintiff's allegations that the Trustees brought the Actions against it for an ulterior motive are conclusory and do not allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This claim is dismissed.

### 2. **Count 2.2**

Count 2.2 is a claim for tortious interference with prospective economic advantage. While again unclear, this claim appears to be brought against all Defendants. However, Plaintiff alleges only that the "Union and/or Trustees knew of these [valid business relationships and expectancy in obtaining future work] and intended to disrupt them." (Compl. ¶¶ 173-74.) For the same reason as stated in the Court's analysis of Count 2.1, Count 2.2 is dismissed against the Contractors' Association for improper group pleading.

14

To state a claim for tortious interference with prospective economic advantage under New Jersey law, a plaintiff must allege "(1) a reasonable expectation of economic advantage from a prospective contractual or economic relationship; (2) the defendant intentionally and maliciously interfered with the relationship; (3) the interference caused the loss of the expected advantage; and (4) actual damages resulted." *Am. Leistritz Extruder Corp. v. Polymer Concentrates, Inc.*, 363 Fed. App'x 963, 967 (3d Cir. 2010).

Plaintiff does not identify a prospective contractual or economic relationship that the Union interfered with.[7] Additionally, although the Complaint has not been properly served on the Trustees, Plaintiff also has not identified a prospective contractual or economic relationship that the Trustees interfered with. For this reason, this claim is dismissed.

### 3.  **Count 2.3**

Count 2.3 is a claim for civil conspiracy. Because only the Union and Trustees are mentioned in the relevant paragraphs of the Complaint related to this claim, Count 2.3 against the Contractors' Association is dismissed for improper group pleading for the same reasons stated in the Court's analysis of Count 2.1.

A civil conspiracy arises when "a combination of two or more persons act[ ] in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Onyx Enters. Canada, Inc. v. Royzenshteyn*, No. 23-02913, 2025 WL 62834, at *14 (D.N.J. Jan. 8, 2025) (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005)). "Civil conspiracy claims under New Jersey law require the plaintiff to plead a viable underlying tort claim." *Id.* (quoting *Dill v. Yellin*, 725 F. Supp. 3d 471, 484 (D.N.J. 2024)). Because Plaintiff has failed to plead a claim of abuse of

---

[7] This claim may also be preempted by federal labor law. *See, e.g.*, *Paramount Enters., Inc. v. Laborers E. Region Org. Fund*, No. 13-3295, 2015 WL 5778779, at *4 (D.N.J. Sept. 30, 2015). The Court does not address that issue here, however, because Defendants do not argue that this claim or the other state claims (other than Count 5) are preempted. (*See* Trustee Br.; Contractors' Association Br.; Union Br.)

process or tortious interference with prospective economic advantage, Plaintiff's civil conspiracy claim against the Union also fails.

### D.  Counts 3.1 and 3.2

Count 3 is for "unfair competition." (Compl. at 44.) Because there are no paragraphs under this count, the Court interprets it as a heading for Count 3.1, common law unfair competition, and Count 3.2, statutory unfair competition.

New Jersey's common law of unfair competition "is an amorphous area of jurisprudence [that] knows of no clear boundaries." *EP Henry Corp. v. Cambridge Pavers, Inc.*, No. 17-1538, 2017 WL 4948064, at *6 (D.N.J. Oct. 31, 2017) (quoting *Duffy v. Charles Schwab & Co. Inc.*, 123 F. Supp. 2d 802, 815 (D.N.J. 2000)). Under New Jersey's common law, the tort of unfair competition is, thus far, limited to the following three broad categories of behavior: "(1) the 'passing off' of [another's commercial] goods or services [as one's own]; (2) unprivileged imitation; and (3) tortious interference." *Id.* at *6.

Plaintiff's common law unfair competition claim is one of tortious interference. This claim rests on its allegations that the Union and Trustees initiated "sham litigation" against it to "interfere with RB's business relationships, customers, goodwill, and market position." (Compl. ¶ 182.) However, there are only conclusory allegations that the Trustees initiated the 2021 and 2023 Actions in order to interfere with RB's business relationships. (*See generally id.*) Moreover, under New Jersey law, "[t]here is no distinct cause of action for unfair competition. It is a general rubric which subsumes various other causes of action." *C.R. Bard, Inc. v. Wordtronics Corp.,* 561 A.2d 694, 696 (N.J. Super. Ct. Ch. Div. 1989). Courts have therefore dismissed unfair competition claims where they are duplicative of claims for tortious interference. *See Juice Entm't, LLC v. Live Nation Entm't, Inc.,* No. 11–7318, 2012 WL 2576284, at *5 (D.N.J. July 3, 2012); *Heartland*

*Payment Sys., LLC v. Carr*, No. 18-09764, 2021 WL 302918, at *8 (D.N.J. Jan. 29, 2021) (dismissing unfair competition claim and noting that cases proffered by defendant in which an unfair competition claim coexisted with a tortious interference claim involved alleged misappropriation of intellectual property or did not contain a parallel tortious interference claim). Here, the factual basis for Plaintiff's unfair competition claim is the same as its tortious interference claim. The unfair competition claim is dismissed.

Plaintiff's statutory unfair competition claim pursuant to N.J. Stat. Ann. § 56:4-1 also fails. This provision states: "[n]o merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." N.J. Stat. Ann. § 56:4-1. There are no allegations in the Complaint that any Defendant has "appropriated for their own use" Plaintiff's name, brand, trade-mark, reputation or goodwill. Instead, Plaintiff alleges that the Union and/or the Trustees violated this provision because they "engag[ed] in sham litigation and false representations regarding RB's business and operations, with the intent to disrupt RB's business" and "deceive the market and injure RB as a competitor[.]" (Compl. ¶¶ 187-88.) Plaintiff points to no New Jersey decision holding that the filing of a lawsuit is a viable theory of unfair competition. *See Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 331 (D.N.J. 2006) (dismissing an unfair competition claim based on the filing of a lawsuit because defendant did not identify any "decision that would indicate that it is a viable theory under New Jersey law"). For the foregoing reasons, the Court dismisses this claim.

### E. Count 4

Count 4 is for "ERISA issues," but does not reference ERISA. (*See* Compl. ¶¶ 194-200.) However, because the Complaint contains an allegation that "the funds collected also fails to meet

17

its statutory obligations under ERISA Section 404 (29 USC § 1104)," the Court will address this provision of ERISA. (*Id.* ¶ 137.)

Plaintiff has not alleged facts supporting statutory standing for this claim. Under ERISA, a "participant, beneficiary or fiduciary" may bring a civil action for appropriate relief against a plan fiduciary for breach of fiduciary duty. *See* 29 U.S.C. §§ 1104, 1105, 1109 & 1132(a)(2). Plaintiff does not allege that it is a participant, beneficiary, or fiduciary, and therefore does not have standing to sue Defendants for breach of fiduciary obligation. *See McCaffree Finanacial Corp. v. ADP, Inc.*, No. 20-5492, 2022 WL 970282, at *3–5 (D.N.J. Mar. 31, 2022); *see also Arber v. Equitable Beneficial Life Ins. Co.*, 848 F. Supp. 1204, 1214 (E.D. Pa. 1994). Count 4 is dismissed.

## F. **Count 5**

Count 5 is for breach of the CBA.[8] Although this claim does not specify the Defendant whom it is against, because only Plaintiff and the Union signed the CBA (*See* Grancio Decl. Ex. B), the Court dismisses this claim against the Contractors' Association for improper group pleading under Rule 8.

The LMRA authorizes suits in federal district court for breach of contracts between an employer and a labor organization representing employees. 29 U.S.C. §§ 185(a) and (c). Section 301(a) of the LMRA states, in relevant part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

---

[8] Plaintiff does not specify whether this claim arises under state or federal law. The Court treats it as a claim arising under LMRA because "Section 301 of the LMRA preempts state law claims when the contract claims are based on rights created under a CBA." *Treusch v. Ctr. Square Supermarket, LLC*, 921 F. Supp. 2d 336, 342 (D.N.J. 2013).

18

29 U.S.C. § 185(a). An "agreement to arbitrate…contained in [a CBA] should be specifically enforced" by federal courts. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451 (1957). Federal courts have jurisdiction over labor disputes involving the breach of a CBA, but the "primacy of arbitral resolution of industrial disputes [remains the LMRA's] centerpiece." *Voilas v. Gen. Motors Corp.*, 170 F.3d 367, 372 (3d Cir. 1999) (citing *Lincoln Mills*, 353 U.S. at 455-56). Moreover, "it has been established that where the [CBA] contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation omitted) (citation omitted); *see also Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 240 (3d Cir. 2005), *as amended* (Mar. 17, 2005) (If [a CBA] includes an arbitration clause, it is assumed that the parties bargained for a grievance resolution procedure in which an arbitrator would interpret the agreement"); *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 167 (3d Cir. 1999) ("It has long been an established precept of federal labor law that the method of dispute resolution agreed to by the parties in their labor agreement takes primacy over civil actions for breach of contract.").

Article XV of the CBA provides for grievances and arbitration procedures "arising out of or in connection with the interpretation and/or application of this Agreement[.]" (Grancio Decl. Ex. B at 14.) This section provides that any disputes, complaints, or charges connected to the interpretation or application of the CBA must be brought before the Union and Joint Trade Board; if the Joint Trade Board is deadlocked over a dispute, the matter is to be submitted to an Arbitrator with the American Arbitration Association for a hearing and decision. (*Id.* at 14-16.) Additionally, a unanimous Trade Board decision can be subject to enforcement or review in court. (*Id.* at 16.)

Section 3 of this provision states that the Union and Funds may elect either litigation or Joint Trade Board arbitration proceedings in their sole and absolute discretion. (*Id.* at 17.) However, there is no similar provision for employers. (*See id.*) Therefore, Plaintiff was required to comply with the procedures set forth in Article XV of the CBA regarding arbitration. Plaintiff does not allege that it has done so. (*See* Compl.) For that reason, Count 5 is dismissed.

### G. Count 6

Count 6 is for "unfair labor practices." (*See* Compl. at 53.) Plaintiff alleges that Defendants engaged in unfair labor practices in violation of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 158, 187, and specifically 29 U.S.C. § 158(b)(4). (*See* Compl. ¶ 208.) Plaintiff alleges that Defendants engaged in unfair labor practices by (a) requiring general contractors with which RB was awarded a contract to insist on the employment of union members; (b) the CBA requiring RB to hire union members and to cause RB to deduct "significant monies" from their wages along with fringe benefits contributions; (c) collecting payments during the evergreen clause period of the CBA, and (d) obtaining "unlawful exactions" by suit. (*Id.*)

First, although Count 6 is brought against all Defendants, the allegations underlying Count 6 are aimed only at the Union. (*See id.* ¶¶ 206-09.) For that reason, Count 6 is dismissed against the Contractors' Association for improper group pleading under Rule 8. And had the Trustees been properly served, this count also improperly groups the Trustees with the other Defendants without clarifying the allegations against them specifically. *See Galicki*, 2015 WL 3970297, at *2.

Second, Count 6 against the Union is also dismissed. Section 303(a) of the LMRA provides that "[i]t shall be unlawful…for any labor organization to engage in any activity or conduct defined as an unfair labor practice" under Section 8(b)(4) of the NLRA, which is codified at 29 U.S.C. § 158. 29 U.S.C. § 187(a). Section 303(b) provides a private right of action for "[w]hoever shall be

20

injured in his business or property by reason or any violation of subsection (a)[.]" 29 U.S.C. § 187(b). Section 8(b)(4)(i) states that it is an unfair labor practice for labor organizations or its agents to "engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services[.]" Plaintiff does not allege that the Union induced or encouraged any individual to engage in a strike or refuse to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services. (*See* Compl. ¶¶ 206-09.) Therefore, the Court interprets this claim as arising under Section 8(b)(4)(ii).

Section 8(b)(4)(ii) makes it unlawful "to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is… [situations covered by subsections (A)-(D)]." Plaintiff does not specify which subsection under Section 8(b)(4)(ii) is applicable to its claim. Regardless, as to its allegations that it had to make payments pursuant to the CBA (*see* Compl. ¶¶ 102, 208(b)-(d)), Plaintiff has failed to sufficiently allege that the Union "threaten[ed], coerce[d], or restrain[ed]" any individual, as required. *See NLRB v. Drivers, Chauffeurs, Helpers, Local Union No. 639*, 362 U.S. 274, 290 (1960) (directing courts to exercise "caution" in interpreting the phrase "to threaten, coerce, or restrain," and not give the phrase a "broad sweep.").

RB also alleges that, for the Grand Central Contract, the Union "put pressure on the general contractor, to whom Plaintiff was contracted, to require their union members to be employed to perform 'covered work' under the CBA regarding the installation and construction of terrazzo and the specialized floors." (Compl. ¶ 62.) This was allegedly done "to coerce RB to hire its union

21

members…" (*Id.* ¶ 63.) Plaintiff also alleges that the "general contractor then required RB to utilize union employment." (*Id.* ¶ 64.) Although not clear from the Complaint, this allegation appears to invoke Section 8(b)(4)(ii)(B) of the NLRA, which makes it an unfair labor practice for a union "to threaten, coerce, or restrain any person engaged in commerce," where "an object" of the union's coercive conduct is to force that person to "cease doing business with any other person," 29 U.S.C. § 158(b)(4)(ii)(B), and Section 8(b)(4)(ii)(A), which prohibits unions from pressuring employers into agreements to "cease doing business with any other person," among other prohibitions. *Id.* § 158(b)(4)(ii)(A), (e). As the Supreme Court noted in *N.L.R.B. v. Int'l Longshoremen's Ass'n, AFL-CIO*,

> [T]he relevant inquiry under §§ 8(b)(4)(B) and 8(e) is whether a union's activity is primary or secondary-that is, whether the union's efforts are directed at its own employer on a topic affecting employees' wages, hours, or working conditions that the employer can control, or, instead, are directed at affecting the business relations of neutral employers and are "tactically calculated" to achieve union objectives outside the primary employer-employee relationship.

473 U.S. 61, 81 (1985). Plaintiff has only summarily alleged that the Union pressured the general contractor to refrain from doing business with Plaintiff, and has not alleged that such pressure arose from Union objectives outside of the primary employer-employee relationship. (*See* ¶¶ Compl. 62-64.) Count 6 is therefore dismissed for failure to state a claim.

### H. Count 7

Count 7 is for unjust enrichment due to Defendants' "unlawful exactions collected in violation of the LMRA, ERISA and the CBA." (Compl. ¶ 212.)

Defendants first argue that this claim is preempted by ERISA. (*See* Union Br. at 14; Trustee Br. at 37.) The Court will not dismiss the unjust enrichment claim due to ERISA preemption because it has already found that Plaintiff does not have standing under ERISA. *See Pascack Valley*

22

*Hosp. v. Loc. 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004), *as amended* (Dec. 23, 2004).

However, the Court will still dismiss the unjust enrichment claim. To state a claim for unjust enrichment under New Jersey law, a plaintiff must allege "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d Cir. 2010) (quoting *Wanaque Borough Sewerage Auth. v. Twp. of West Milford*, 677 A.2d 747 (N.J. 1996)). Plaintiff here has not alleged that it conferred a benefit upon any of the Defendants such that it can recover under an unjust enrichment claim. Therefore, Count 7 is dismissed.

## IV.    CONCLUSION

For the reasons stated above, the Trustee Defendants' motion to dismiss is **ADMINISTRATIVELY TERMINATED** pending service of process, and the Contractors' Association and Union's motions to dismiss are **GRANTED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Stacey D. Adams, U.S.M.J.
       Parties

23